UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOEL KAPLAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 11 C 6487 |
| | ) |
| STANDARD INSURANCE COMPANY, | ) Judge Rebecca R. Pallmeyer |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joel Kaplan ("Kaplan") worked as a trial attorney until labile hypertension caused him to stop practicing in December 2010. At that point, Kaplan sought payment of disability benefits under two policies administered by Defendant Standard Insurance Company ("Standard"). Standard denied Kaplan's claims under both policies. In this action, brought under the court's diversity jurisdiction, Plaintiff seeks recovery under Illinois state law claims for breach of contract and for unreasonable and vexatious delay of payments pursuant to 215 ILCS 5/155. Defendant moves to dismiss for lack of subject-matter jurisdiction, and alternatively, for partial summary judgment on the unreasonable delay claim. As Kaplan's claim does not satisfy the amount in controversy requirement, Defendant's motion to dismiss for lack of subject-matter jurisdiction [32] is granted.

## FACTUAL BACKGROUND

Plaintiff Joel Kaplan was an Illinois citizen at all times relevant to this action. (Pl.'s Amended Compl. [23] ¶ 1.) Defendant Standard Insurance Company, a subsidiary of StanCorp Financial Group, Inc., is incorporated in the State of Oregon and has its principal place of business there. (*Id.* ¶¶ 1, 6.)

Plaintiff obtained his license to practice law in Illinois in 1973 and worked as an attorney at Karlin & Fleisher LLC in Chicago, Illinois from 1979 to 2010. (Pl.'s Resp. to Def.'s Statement of Material Facts [40], hereinafter "Pl.'s 56.1," ¶ 10.) In the early 1980s, Plaintiff purchased two

disability income insurance policies underwritten by Minnesota Mutual Life Insurance Company and later acquired and administered by Defendant. (Pl.'s 56.1 ¶¶ 1, 10; Pl.'s Resp. [38] at 1.) The first policy, Policy #1478268H ("Policy A"), became effective on September 26, 1981, and the second policy, Policy #1533775H ("Policy B"), became effective on February 8, 1983. (*Id.* ¶ 7.) Plaintiff has paid all of his premiums, and the policies have remained in effect since he opened them. (Pl.'s Amended Compl ¶ 9.) Policy A provides for monthly benefits of $1000 for disability due to sickness. (Policy #1478268H, hereinafter "Policy A," Ex. A to Pl.'s Compl. [1] at 3.) The plan provides for payments to begin after an initial waiting period[1] of thirty days from the date of disability and continue as long as the insured remains disabled. (*Id.* at 3, 6.) The policy terminated on September 25, 2012, the policy anniversary following the insured's sixty-fifth birthday. (*Id.*; Medical Records, Ex. L to Def.'s App. to Mot. to Dismiss [34], hereinafter "Def.'s App.," at 6.) For disability periods of less than one month, the policy calls for benefits to be prorated on the basis of a thirty-day month. (Policy A, Ex. A to Pl.'s Compl. at 3.9-10.) The terms of Policy A also govern Policy B, with two exceptions: (1) the initial waiting period for Policy B is ninety days; and (2) Policy B terminated on February 7, 2013. (Policy #1533775H, hereinafter "Policy B," Ex. B to Pl.'s Compl. at 3, 6, 9-10.)

Due to labile hypertension, a history of coronary artery disease, and other health issues, Plaintiff was forced to stop working at the end of 2010. (Pl.'s 56.1 ¶ 20.) The precise date on which Plaintiff became disabled is unclear. Plaintiff asserts in his complaint that he had to leave his job on December 23, 2010 (Pl.'s Amended Compl. ¶ 10), and states, in support of summary judgment, that he applied for disability benefits under both of his policies on January 17, 2011. (Pl.'s 56.1 ¶ 20.) But in an attachment to claims that Plaintiff filed with Defendant, Kaplan stated that his

---

[1] Both policies define "waiting period" as the "number of consecutive days . . . at the beginning of each period of disability for which no monthly income benefit will be paid." (Policy A, Ex. A to Pl.'s Compl. at 6; Policy B, Ex. B to Pl.'s Compl. at 6.)

disability caused him to leave work on December 31, 2010 (Individual Disability Benefits Insured's Statement, Ex. F to Def.'s App. at 6).

Two months later, in a letter dated March 18, 2011, Defendant denied Plaintiff's claims for benefits under both policies, acknowledging that Kaplan suffers from coronary artery disease, but not that cessation of work was appropriate. (Pl.'s 56.1 ¶ 40; Letter from Dalby to Kaplan of 03/18/11, Ex. O to Def.'s App.) Pursuant to the terms of his policies, Kaplan requested an internal review of this denial in a letter to Standard dated May 19, 2011. (Letter from Kaplan to Dalby of 05/19/11, Ex. P to Def.'s App.) To substantiate his claim, Plaintiff submitted additional health information to Standard, including a physician's report concluding that Kaplan's volatile blood pressure was, indeed, disabling. (Pl.'s Own Statement of Material Facts [40], hereinafter "Pl.'s SMF," ¶¶ 17-18.) As part of its internal review, Standard consulted with Bradley Fancher, M.D., to evaluate Kaplan's medical condition. (Pl.'s 56.1 ¶ 42.) Fancher concluded that Kaplan's blood pressure "is on average quite well controlled," and that Plaintiff should "have no restrictions or limitations" based on his health. (*Id.* ¶¶ 42, 45.) Based on Fancher's report, Standard upheld its denial in a final determination letter dated June 29, 2011. (*Id.* ¶ 46; Letter from Powers to Kaplan of 06/29/11, Ex. R. to Def.'s App.)

On September 16, 2011, Plaintiff filed this action against Defendant for breach of both insurance contracts. (Pl.'s Amended Compl. ¶ 16.) He claims damages of $1000 per month for each policy from the appropriate date of payment onset through judgment, plus interest. (*Id.*) He also seeks a declaratory judgment that monthly payments shall continue as long as he meets the terms of the policies. (*Id.*) Lastly, Plaintiff claims "maximum" statutory damages, attorney fees, and court costs pursuant to 215 ILCS 5/155 for Defendant's unreasonable and vexatious delay of his disability benefit payments. (*Id.* ¶ 4.)

**DISCUSSION**

**I.       Subject-Matter Jurisdiction**

Federal courts are courts of limited jurisdiction. *Hart v. FedEx Ground Package Sys, Inc.*, 457 F.3d 675, 679 (7th Cir. 2006). A court may not address the merits of a case over which it lacks jurisdiction. *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 693 (7th Cir. 2003) (citing *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 379 (1981)). Thus, the court has an ongoing obligation to dismiss any action over which it lacks subject-matter jurisdiction. *See* FED. R. CIV. P. 12(h)(3). Plaintiff has alleged, and Defendant has admitted, that the court has diversity jurisdiction pursuant to 28 U.S.C. § 1332. (Def.'s Answer to Pl.'s Amended Compl. [12] ¶ 1.) Defendant now moves to dismiss, however, arguing that Plaintiff's claims do not satisfy the requirement that the amount in controversy exceed $75,000. 28 U.S.C. § 1332. The amount in controversy is calculated at the time of filing. *Clark v. State Farm Mut. Auto. Ins. Co.*, 473 F.3d 708, 711 (7th Cir. 2007).

**II.      Amount in Controversy**

Subject-matter jurisdiction may be challenged either facially or factually. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). Facial challenges require only that the court look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject-matter jurisdiction. *Id.* at 443. That is, a facial challenge asserts that even if Plaintiff's allegations were true, they would be insufficient to support jurisdiction. Factual challenges, on the other hand, allow the court to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject-matter jurisdiction exists." *Id.* at 444 (citations omitted). Moreover, when a defendant contests a plaintiff's claims regarding the amount in controversy, as Defendant does here, the plaintiff must support its claim with "competent proof" to establish the "jurisdictional facts by a preponderance of the evidence." *McMillian v. Sheraton Chicago Hotel & Towers*, 567 F.3d 839, 844 (7th Cir. 2009) (internal

quotation marks omitted).

Defendant does not dispute diversity of citizenship, but argues that the amount in controversy falls below the $75,000 threshold. Plaintiff, on the other hand, contends that the combination of compensatory damages, punitive damages, and attorneys fees sought place the amount in controversy "well in excess of $75,000."[2] (Pl.'s Resp. at 7.) The parties' dispute focuses on two issues: (1) the value of past benefits due; and (2) the potential statutory damages recoverable under Illinois law.

### A. Value of Past Due Disability Insurance Benefits

#### 1. Appropriate Date for Determining Benefits Due

In addition to seeking past benefits accrued, Plaintiff asks the court for a declaratory judgment that his benefits shall continue to accrue so long as he meets the requirements of both policies. (Def.'s Answer to Pl.'s Amended Compl. ¶ 16.) Plaintiff claims that such a declaration would allow the amount in controversy to include all benefits that accrue through the date of the court's ruling on Defendant's motion; because his policies reached their full value of $48,000 on March 22, 2013, he urges the court to find that the benefits in controversy total $48,000. (Pl.'s Mem. at 6-7; Pl.'s Rep. in Support of Mot. for Amended Compl. [21] ¶ 4.) Standard contends, however, that the only benefits at issue are those that had accrued up as of the date the complaint was filed, September 16, 2011 ($13,633.33, discussed below). (Def.'s Mem. in Support of Mot. to Dismiss (hereinafter, "Def.'s Mem.") [33] at 3.)

As the amount in controversy is calculated as of the date a claim is filed, subsequent events cannot establish jurisdiction. *Johnson v. Wattenbarger*, 361 F.3d 991, 993 (7th Cir. 2004) ("Whether § 1332 supplies subject-matter jurisdiction must be ascertained at the outset; events

---

[2] Plaintiff also asserts that the court has already determined subject-matter jurisdiction exists, citing the court's grant of Plaintiff's motion for leave to file an amended complaint [22]. (Pl.'s Resp. at 5) However, the court has an ongoing obligation to dismiss an action at any point if it determines that subject-matter jurisdiction does not exist. FED. R. CIV. P. 12(h)(3).

after the suit begins do not affect the diversity jurisdiction."). Specific to the insurance context, the Seventh Circuit has held that the full value of an insurance policy can be used to calculate the amount in controversy when a plaintiff challenges the validity of the policy itself; but when a plaintiff challenges the insurer's liability to pay under a policy, the appropriate amount in controversy is the value of the disputed payments at the time of filing. *Keck v. Fidelity & Cas. Co. of N.Y.*, 359 F.2d 840, 841 (7th Cir. 1966) ("Future benefits payable under a contract of insurance may be used to compute the sum in controversy for jurisdictional purposes only when the validity of the insurance policy itself, and not merely the presence or absence of conditions measuring the insurer's liability thereunder, is the matter in dispute."); *see also Hawkins v. Aid Ass'n for Lutherans*, 338 F.3d 801, 805 (7th Cir. 2003) ("when the validity of a policy (as opposed to the insurer's obligation to pay) is in dispute, the face value of that policy is a proper measure of the amount-in-controversy."); *Monarch Life Ins. Co. v. Broches*, No. 03 C 8253, 2004 WL 1718660, at *3 (N.D. Ill. July 29, 2004) (citing *Keck*, 359 F.2d at 841). Seventh Circuit precedent also generally bars courts from declaring a claimant's eligibility for benefits in the future. *See Morgan v. Aetna Life Ins. Co.*, 157 F.2d 527, 530 (7th Cir. 1946); *Shyman v. Unum Life Ins. Co. of Am.*, No. 01 C 7366, 2002 WL 31133244, at *1 (N.D. Ill. Sept. 20, 2002) (dismissing request for declaratory judgment of future benefits) (citing *Morgan*, 157 F.2d at 529-30).[3] Plaintiff's right to disability benefits under his insurance policies is not ripe for decision: it is subject to future conditions that must actually be satisfied after filing this suit in order for him to receive benefits.[4] The court does not ordinarily make rulings that are

---

[3] Plaintiff attempts to distinguish *Keck* and *Morgan* as relating to motions to dismiss rather than to motions for summary judgment; he argues that, on motions for summary judgment, the court must consider benefits that have accrued past filing. (Pl.'s Resp. 6-7.) Yet, the motion before the court is one to dismiss. Defendant cites *Keck* and the other cases to support its argument that future payments cannot be included in the amount in controversy, not to support its alternative motion for partial summary judgment on the unreasonable delay claim.

[4] Although Plaintiff's policies have now reached their full value, the court reviews the issue of ripeness as of the time the litigation is commenced. *See Commodity Trend Service, Inc.*
(continued...)

contingent on the occurrence of future events.  *See Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (affirming dismissal of "claim that rest[ed] upon contingent future events that may not occur as anticipated, or indeed may not occur at all") (internal quotation marks omitted).  Accordingly, the proper date for determining the benefits allegedly due must be the date on which the complaint was filed: September 16, 2011.

### 2. Calculation of Benefits Due at the Time of Filing

Each of Plaintiff's two policies provide for monthly payments of $1000 for disability due to sickness until the policy anniversary on or after Plaintiff's sixty-fifth birthday.  (Pl.'s Amended Compl. ¶ 7.)  For purposes of this motion, the court assumes *arguendo* that the onset of his disability is December 23, 2010, as alleged in the complaint.

Policy A has a thirty-day waiting period, which ran from December 23 through January 21, 2011.[5]  Policy B has a ninety-day waiting period, which ran from December 23 through March 22, 2011.  Plaintiff filed this lawsuit on September 16, 2011.  (Pl.'s Compl. [1].)  Thus, combining both policies, Plaintiff accrued benefits for thirteen months and nineteen days,[6] for a total of $13,633.33.[7]

---

[4](...continued)
*v. Commodity Futures Trading Commission,* 233 F.3d 981, 986 (7th Cir. 2000) (concluding that case was ripe because plaintiff "had a reasonable fear of being subject to administrative proceedings at the time [it] filed its complaint"); *Kardules v. City of Columbus*, 95 F.3d 1335, 1345 (6th Cir. 1996) (reviewing issue of ripeness at time of complaint); 15 MOORE'S FEDERAL PRACTICE § 101.74 (Matthew Bender 3d ed. 2005) ("The matter must have been ripe for review at [the time of the complaint]; subsequent ripening of the issue while the matter is under the court's consideration on a jurisdictional motion to dismiss is not sufficient to confer jurisdiction that did not originally exist when the action was initiated.")

[5]     Defendant calculates the thirty-day waiting period as ending on January 22, 2011.  (Def.'s Mem. at 4.)  That calculation leads to the conclusion that the amount in controversy is $13,600.  (*Id.*)

[6]     For Policy A, the applicable payment period is seven months and twenty-five days (January 22, 2011 through September 15, 2011).  For Policy B, the payment period is five months and twenty-four days (March 23, 2011 through September 15, 2011).

[7]     Policy A: (7 months x $1000 per month) + (25 days/30 days per month x
(continued...)

### B.     Statutory Damages

Plaintiff also seeks punitive damages under 215 ILCS 5/155 of the Illinois Insurance Code ("IIC").  In cases where punitive damages are relied upon to satisfy the amount in controversy requirement for diversity jurisdiction, the court must undergo a two-part analysis: (1) determine whether punitive damages are recoverable under state law; and (2) if they are, include them in the amount-in-controversy calculation.  Subject-matter jurisdiction exists unless it is clear beyond a legal certainty that, even with the addition of the penalty, the plaintiff would not be entitled to recover an amount sufficient to satisfy the jurisdictional amount.  *See LM Ins. Corp. v. Spaulding Enters. Inc.*, 533 F.3d 542, 551 (7th Cir. 2008).

Punitive damages are recoverable under the section of the IIC at issue here.  *See Jump v. Schaeffer & Assocs. Ins. Brokerage, Inc.*, No. 04-2884, 123 F. Appx. 717, 719-20 (7th Cir. 2005) (finding that 215 ILCS 5/155 permits the recovery of punitive damages); *see also Smith v. Am. Gen. Life & Accident Ins. Co.,* 337 F.3d 888, 895-96 (7th Cir. 2003).  Specifically, where an insurance company has "vexatious[ly] and unreasonab[ly]" delayed payments, Section 155 allows the court to award the plaintiff costs, attorney fees, and "an amount not to exceed any one of the following amounts:

(a)     60% of the amount which the court or jury finds such party is entitled to recover against the company, exclusive of all costs;
(b)     $60,000;
(c)     the excess of the amount which the court or jury finds such party is entitled to recover, exclusive of costs, over the amount, if any, which the company offered to pay in settlement of the claim prior to the action.

215 ILCS 5/155(1)(a)-(c).

---

[7](...continued)
$1000/month)) = $7833.33; Policy B: (5 months *$1000/month) + (24 days/30 days per month x $1000 per month)) = $5800.00; Total = $13,633.33.  Plaintiff rejects this figure in some of his filings and claims the amount is $20,000, citing a "Benefits Calculation" exhibit that does not appear to exist in the record.  (Pl.'s Rep. in Support of Mot. for Amended Compl. [21] ¶ 3; Pl.'s 56.1 ¶ 1.)  In other filings, however, Plaintiff seems to accept this figure.  (Pl.'s Resp. at 7.)

Turning to the second prong (whether a lack of recovery of punitive damages is legally certain), the court must determine whether Plaintiff will be unable to recover a jurisdictionally sufficient amount under Section 155. The parties interpret the statute differently with respect to whether such a recovery is possible. Specifically, Defendant and Plaintiff disagree over two distinct issues: (1) the appropriate base figure for calculating damages under Sections 155(1)(a) and (c) for the purposes of satisfying the amount in controversy requirement; and (2) whether an award under Section 155 must be limited to the smallest of the three amounts listed in the statute.

### 1. Base Amount for Calculations under Section 155

When determining the amount in controversy, Defendant asserts that the base figure for the formulas in Section 155(1)(a) and Section 155(1)(c)—that is, the amount that "the court or jury finds [Plaintiff] is entitled to recover against the [Standard], exclusive of all costs"—should be the benefits in dispute at the time of filing: $13,633.33. (Def.'s Mem. at 5-6.) Plaintiff argues, however, that the full value of the policies, $48,000, is the proper base amount. (Pl.'s Resp. at 6.) As the court has already determined that only the benefits accrued before Kaplan filed this suit are in controversy (discussed above), that same sum is the appropriate amount for use in the punitive damages calculations of Section 155.[8] Thus, the three possible punitive damages amounts under Section 155(1) are: (a) $8180 (60% of $13,633.33 past benefits due), (b) $60,000, or (c) $13,633.33 (past benefits due minus the settlement offer, which is zero).[9]

### 2. "An Amount Not to Exceed Any One of the Following Amounts"

---

[8] In support of his position, Plaintiff cites to *Calcagno v. Personalcare Health Mgmt., Inc.* for the notion that Section 155 "refers to all amounts which are recoverable in actions against insurers." 207 Ill. App. 3d 493, 505, 565 N.E.2d 1330, 1338 (4th Dist. 1991). The rest of the sentence to which Plaintiff makes clear, however, that the *Calcagno* court was not referring to benefits accrued after filing, as Plaintiff seeks to do here. (*Id.* ("refers to all amounts which are recoverable in actions against insurers, including damages incurred prior to payment of benefits in situations where all benefits claimed are paid prior to litigation").

[9] Neither party refers to any settlement offer, so the court assumes none occurred.

Section 155 states that the court's award of damages is "not to exceed *any* one of the following amounts: [paragraphs (a), (b), (c)]." 215 ILCS 5/155. Defendant argues that Section 155 limits the court's award of damages to the smallest of its three amounts. (Def.'s Mem. at 5-6.) Under this reading, the amount in controversy here can include no more than $8180 in punitive damages. Plaintiff disagrees that the statute requires the court to use the smallest damages option. Rather, Kaplan claims that the court may choose any of the three amounts under Section 155. (Pl.'s Resp. at 6-7.) Plaintiff's reasoning would allow for punitive damages of $60,000 under Section 155(1)(b).

The "vast majority of Illinois courts [that] have addressed Section 155's penalty provision" have adopted the Defendant's reasoning. *Great Lakes Dredge & Dock Co. v. Commercial Union Assurance Co.*, No. 94 C 2579, 2000 WL 1898533, at *14 (N.D. Ill. Sept. 18, 2000), *rev'd on other grounds sub nom. Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789, 790 (7th Cir. 2001). District courts in the Seventh Circuit have also followed the Defendant's proposed approach, interpreting the plain language of Section 155 to limit the court's award of damages to the smallest of the three amounts. *See Atteberry v. Esurance Ins. Servs., Inc.*, 473 F. Supp. 2d 876 (N.D. Ill. 2007) (holding with respect to the $60,000 amount in Section 155(1)(b) that, "as the statute makes plain, no award in that amount is possible unless the $60,000 ceiling figure is less than 60% of [Plaintiff's] recovery"); *Rehkemper & Son, Inc. v. Ind. Lumbermens Mut. Ins. Co.*, No. 09-858-GPM, 2010 WL 547167, at *5 (S.D. Ill. Feb. 10, 2010) ("An award under [Section 155] must be limited to the smallest of the three possible amounts.") (citing *Nelles v. State Farm Fire & Cas. Co.*, 318 Ill. App. 3d 399, 400, 742 N.E.2d 420, 421 (1st Dist. 2000)); *Great Lakes Dredge & Dock Co.*, 2000 WL 1898533, at *14 ("Section 155 precludes the penalty from exceeding 'any one' of the three options – meaning, quite plainly, that it may not exceed any of the three options.").

Plaintiff insists that the court is free to choose among the three paragraphs and argues that the phrase "not to exceed any one of the following amounts" merely restricts the court from

10

exceeding the chosen paragraph, regardless of whether this exceeds the other two options. (Pl.'s Resp. at 7.) In support of this proposition, Plaintiff cites only *Millers Mut. Ins. Assoc. of Ill. v. House*, 286 Ill. App.3d 378, 675 N.E.2d 1037 (5th Dist. 1997). In *House*, the Fifth District Appellate Court of Illinois rejected the insurer's argument that Section 155 required the trial court to choose the lowest of the three statutory damages options. *Id.* at 387, 675 N.E.2d at 1044. Pointing to the language of the statute, the *House* court reasoned that Section 155 "does not contain any language to suggest that the court is required to choose damages in the least amount possible" and that "the legislature specifically left the choice of the three categories of punitive damages up to the trial court." *Id.* at 387-8, 675 N.E.2d at 1044.

*Millers Mutual* appears to be the only court that has so concluded. This court respectfully instead adheres to the interpretation proposed by Defendant, and adopted by the weight of authorities. As Judge Gottschall explained:

> The phrase 'not to exceed any one of the following amounts' does not have a different meaning from the phrase 'not to exceed any of the following amounts.' The key word is 'any,' not 'one.' The [plaintiff's] reading effectively omits 'any' from the statute, requiring the award of a penalty 'not to exceed one of the following amounts.' . . . The only case supporting the [plaintiff's] interpretation is [*Millers Mutual*] . . . . The *Millers Mutual* court's reasoning does not persuade this court to disregard the statute's express language, nor the wealth of case law applying it. This court declines to follow *Millers Mutual*, and holds that the [plaintiff's] penalty award under Section 155(1) may not exceed any of the three penalty options listed.

*Great Lakes Dredge & Dock Co.*, 2000 WL 1898533, at *14-15. Other courts have reached the same conclusion. *See Jump*, 123 F. Appx. at 718-20 (referring to the lowest option among the Section 155(1) options as the "cap under § 155"); *Cramer v. Ins. Exch. Agency*, 174 Ill. 2d 513, 520, 675 N.E.2d 897, 901 (Ill. 1996) (referring to Section 155(1)(b) as "maximum allowable penalty under the statute").

In sum, the plain language of Section 155 limits an award of statutory damages for unreasonable delay to the smallest amount prescribed by the three paragraphs. In the case at bar, that award would be $8180.

11

### C. Attorney Fees and Costs

Following a finding of unreasonable delay, Section 155 also allows the court to grant Kaplan costs and "reasonable attorney fees." 215 ILCS 5/155(1). Again, however, only legal fees incurred up to the time of filing count toward the jurisdictional minimum. *Hart v. Schering-Plough Corp.*, 253 F.3d 272, 274 (7th Cir. 2001); *Gardynski-Leschuck v. Ford Motor Co.*, 142 F.3d 955, 959 (7th Cir. 1998) ("legal expenses that lie in the future and can be avoided by the defendant's prompt satisfaction of the plaintiff's demand are not an amount 'in controversy' when the suit is filed."). Plaintiff claims that he has incurred over $20,000 in attorney fees on a lodestar basis, as well as costs relating to pleadings and discovery (Pl.'s Resp. at 7); but because Plaintiff did not produce any documentation of his attorney fees during discovery, Defendant argues that he has failed to produce "competent proof" to satisfy his burden upon a challenge to the amount in controversy. Def.'s Rep. at 7; *see McMillian*, 567 F.3d at 844. The court need not make a determination as to whether $20,000 in attorney fees is a "reasonable" amount at this stage, as the distinction is not outcome-determinative. Thus, for the purposes of calculating the amount in controversy, the court assumes *arguendo* that Plaintiff has incurred $20,000 in attorneys fees.

### D. Amount in Controversy Calculation

The court has determined that past benefits due at the date of filing total $13,633.33. Statutory damages must be limited to the lowest of the three possible amounts listed in 215 ILCS 5/155(1); here, 60% of the amount Kaplan is entitled to recover against Defendant, exclusive of all costs: $8180. Third, Defendant argues that Plaintiff fails to meet his burden to establish the value of attorney fees, while Plaintiff claims that he has incurred at least $20,000 in attorney fees. The court assumes this amount to be true for the purposes of determining the amount in controversy. Accordingly, Plaintiff has alleged a total of $41,813.33, well below the $75,000 required to establish diversity jurisdiction.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss for lack of subject-matter jurisdiction [32] is granted. Defendant's alternative request for partial summary judgment is stricken as moot.

ENTER:

Dated: September 30, 2013

_____
REBECCA R. PALLMEYER
United States District Judge